UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA HUDSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a Delaware corporation,<br><br>Defendant._____/ | Case No. C-11-03966 JCS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>**[Docket No. 11]** |

## I. INTRODUCTION

Plaintiff Victoria Hudson brings a purported class action against Defendant Wells Fargo Bank asserting claims for breach of contract and breach of fiduciary duty associated with a 203(k) rehabilitation loan issued by Wells Fargo to Plaintiff. In particular, Plaintiff alleges that Wells Fargo failed to pay her the interest that accrued on the portion of the loan funds that had been set aside in a separate escrow account, as required under Section 203(k) of the Federal Housing Act, 12 U.S.C. § 1709(k). Defendant brings a Motion to Dismiss Second Claim for Relief and Claim for Punitive Damages (the "Motion"). In the Motion, Wells Fargo asserts that Plaintiff's claim for breach of fiduciary duty fails, as a matter of law, because Plaintiff has alleged no facts showing the existence of a fiduciary duty on the part of Wells Fargo. Wells Fargo further contends that Plaintiff's request for punitive damages should be dismissed because punitive damages are not available on Plaintiff's remaining claim, for breach of contract. In any event, Wells Fargo asserts, Plaintiff's request for punitive damages fails because she has alleged no facts showing oppression, fraud or malice. The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

The Court finds that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Motion is GRANTED.

## II. BACKGROUND

### A. The Complaint[1]

In her complaint, Plaintiff alleges that on October 21, 2008, she entered into an agreement with Wells Fargo to borrow $246,506.00 from Defendant to purchase and rehabilitate a property located at 9008 Lawlor Street, Oakland, CA ("the Rehabilitation Loan Agreement"). Compl., ¶ 9. The loan was a "rehabilitation loan" governed by section 203(k) of the National Housing Act ("NHA"), 12 U.S.C. § 1709(k). *Id.* at ¶ 1. "When a 203(k) rehabilitation loan is extended, the loan principal is segregated into two different accounts." ¶ 2. "The amount designated as available for use in rehabilitating the property is deposited into a separate escrow account . . . unless and until authorized to be paid directly to an approved contractor for repair work." *Id*. "The remaining principal amount of the loan is paid out as directed by the borrower at the time of loan closing, as in an ordinary property loan transaction." *Id*. Section 203(k) rehabilitation loans are federally insured so long as the lender agree[s] to accrue and pay interest to the borrower on the undisbursed funds that are being held in the separate escrow account.

In the case of Plaintiff's 203(k) loan, $62,645 of the total loan amount was deposited into a separate interest bearing escrow account ("the Rehabilitation Escrow Account"), pursuant to the Rehabilitation Loan Agreement. *Id*., ¶ 9; *see also* Complaint, Ex. 1 (Rehabilitation Loan Agreement), ¶ 4 (providing that Wells Fargo would place a portion of the mortgage principle in a "secured interest bearing account, trust or escrow for the benefit of the Borrower") & ¶ 5 (providing that "interest accumulated in the Rehabilitation Escrow Account will be distributed as required by the 203(k) Borrower's Acknowledgment form HUD 92700-A."). *Id.* at ¶ 10 & Ex. 1, ¶ 5. In preparation for the loan closing, Wells Fargo gave Plaintiff a blank copy of the 203(k) Borrower's Acknowledgment form to complete. *Id*., ¶ 11. The form stated, in part, as follows:

---

[1]The Court assumes the allegations in the complaint to be true for the purposes of this motion. *See Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996)(on motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court assumes the facts alleged in the complaint are true).

United States District Court
For the Northern District of California

> I understand at the time of the loan closing of and F-Insured 203(k) Rehabilitation Loan, for which I have applied to my lender, the proceeds designated for the rehabilitation or improvement (including a contingency reserve, mortgage payments and any other fees, where applicable) are to be placed in an interest bearing escrow account.  The Rehabilitation Escrow Account is not, nor will it be treated as an escrow for the paying of real estate taxes, insurance premiums, delinquent notes, ground rents or assessments. I hereby request the lender, after the Final Release Notice is issued to:
>
> ☐ pay the net interest income to me/us
>
> ☐ Apply the net interest income directly to the mortgage principal balance for an equal amount of principal reduction.
>
> ☐ Other: _____

*Id*., Ex. 2. Plaintiff checked the second box, electing to have interest from the Rehabilitation Escrow Account applied to her mortgage principal balance, and signed the form. *Id*.

Plaintiff alleges that Defendant neither complied with its obligation to reduce her principal loan balance by an amount representing accumulated interest attributable to her Rehabilitation Escrow Account, nor otherwise paid any such amount to her. *Id.* at ¶ 12.

Based on these factual allegations, Plaintiff asserts two claims: 1) breach of contract; and 2) breach of fiduciary duty.  Plaintiff asserts her claims on behalf of herself and a class of Plaintiffs defined as "all persons who have entered into rehabilitation loan transactions with Wells Fargo within the four years prior to the filing of this complaint." *Id.* at ¶ 14.

In support of the breach of fiduciary duty claim, Plaintiff alleges that Wells Fargo "owed fiduciary duties to plaintiff to carry out all written instructions pertaining to that escrow account, including the instructions to accrue interest on al undisbursed amounts in the account and thereafter to pay . . . such interest to plaintiff or credit the amount of such interest to plaintiff in the form of reduced principal on her loan balance." *Id*., ¶ 31.  According to Plaintiff, Defendant breached its fiduciary duties to Plaintiff by: 1)  failing to accrue interest on the funds in the Rehabilitation Escrow Account and pay or credit to Plaintiff all such accrued interest; and 2)  failing to inform her that it was not accruing interest on those funds or reducing her loan principal by the amount of interest that should have accrued on them. *Id.* at ¶ 32.   Plaintiff further alleges that "Wells Fargo intentionally concealed from plaintiff and the members of the class material facts regarding its breaches of fiduciary duty set forth above for the purpose of depriving plaintiff and class members

of her and their property." *Id.*, ¶ 34. Accordingly, Plaintiff contends that Wells Fargo is liable for punitive damages on the breach of fiduciary duty claim. *Id.*

In her prayer for relief, Plaintiff requests: (1) an order certifying this lawsuit as a class action and certifying Plaintiff as representative of the class; (2) an award of actual damages as proven at trial; (3) an award of punitive damages as proven at trial; (4) pre-judgment interest on all amounts otherwise awarded; and (5) such other and further relief as may be just and proper, including costs and reasonable attorneys' fees as allowed by law. *Id.* at 7.

### B. Defendant's Motion to Dismiss

In the Motion, Defendant asserts that Plaintiff's breach of fiduciary duty claim, as well as her request for punitive damages on that claim, fail as a matter of law under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Motion at 3.

Defendant argues that Plaintiff fails to state a claim for breach of fiduciary duty because Plaintiff has alleged no facts showing that Wells Fargo owed Plaintiff a fiduciary duty. *Id.* at 5. According to Wells Fargo, a fiduciary duty arises only where a person "knowingly undertake[s] to act on behalf and for the benefit of another" or "enter[s] into a relationship which imposes that undertaking as a matter of law." *Id.* (quoting *City of Hope Nat'l Med. Center*, 43 Cal. 4th 375, 385-86 (2008)). Further, Wells Fargo asserts, it is a well-established legal principle that in the absence of special circumstances a lenders owe no fiduciary duty to their customers. *Id.* at 5 (citing *Oaks Management Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (2006)). According to Wells Fargo, Plaintiff does not allege facts showing there are any special circumstances that would give rise to a fiduciary relationship between Wells Fargo and Plaintiff. *Id.* at 6. In particular, Defendant argues that: 1) the FHA does not suggest that a lender assumes a fiduciary obligation when it makes a 203(k) loan, especially as it does not provide a private cause of action for borrowers based on a lender's failure to comply with section 203(k); 2) even though Plaintiff refers in passing to the Rehabilitation Escrow Account as a "trust," she does not allege that the Rehabilitation Loan Agreement is a formal trust agreement under which Wells Fargo held funds as trustee for Plaintiff's benefit; and 3) the fact that Wells Fargo served as an escrow holder did not impose a fiduciary duty on it because the performance of ancillary escrow services by a lender does not give rise to a

fiduciary duty under California law and in this case, Wells Fargo was merely acting out of its own self-interest in setting up the escrow account, as this was a requirement for obtaining insurance under the FHA. *Id*. at 7-9 (citing *Peterson Dev't Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103, 117 (1992) and *Palestini v. Homecoming Fin'l, LLC* 2010 WL 3339459 (S.D. Cal. Aug. 23, 2010)).

With regard to the claim for punitive damages, Wells Fargo contends that if the Court grants the motion to dismiss the breach of fiduciary duty claim, it should also dismiss Plaintiff's punitive damages claim because punitive damages are not available on Plaintiff's only remaining claim, for breach of contract. *Id.* at 9. Even if the Court does not dismiss the breach of fiduciary duty claim, Wells Fargo asserts, the request for punitive damages should be dismissed because Plaintiff has not alleged any facts showing that Wells Fargo acted with "oppression, fraud, or malice," as required to award punitive damages under Cal. Civ. Code § 3294. *Id.* at 10.

### C. Plaintiff's Opposition to the Motion to Dismiss

In her opposition brief, Plaintiff asserts that her claim of breach of fiduciary duty is adequately pleaded based on the allegation that Wells Fargo agreed to act as a post-loan escrow holder for some of Plaintiff's funds and to administer those funds according to written instructions. Opposition at 1. In doing so, Plaintiff asserts, Wells Fargo assumed a fiduciary duty to Plaintiff under two theories. *Id*. at 3. First, Plaintiff contends that as escrow holder and administrator of the funds held in the "trust or escrow," Defendant owed a fiduciary duty of limited scope to obey the instructions for the escrow account. *Id.* As to this theory, Plaintiff asserts that neither *Perterson* nor *Palestini*, on which Wells Fargo relies, support a contrary result. *Id*. at 4. Plaintiff argues that in *Peterson*, the court "certainly did not hold that the bank would not have been bound by fiduciary duties if it *had* acted as an escrow agent in connection with the loan; rather the decision holds merely that the bank did not so act on the facts before it." *Id.* Regarding the facts, Plaintiff asserts that *Peterson* did not address a situation wherein a lender expressly undertook to act for another's benefit in performing escrow services that were completely separate from the actual loan transaction, as Wells Fargoallegedly did in this case. *Id*. at 6. Similarly, Plaintiff argues that the *Palestini* court merely made a case-specific factual finding that the tax and insurance impound accounts in question

did not give rise to a fiduciary duty. *Id.* at 6-7. Finally, Plaintiff argues that the question of whether a particular impound account gives rise to a fiduciary duty is a factual question that turns on the particular language used in the loan documents and therefore is more appropriately decided based on a full development of the record rather than at the pleading stage of the case. *Id*. at 6-7 (citing *Marsh v. Home Fed. Sav. & Loan Assn.*, 66 Cal. App.3d 674 (1977) and *Petherbridge v. Prudential*, 79 Cal. App. 3d 509 (1978)).

Second, Plaintiff asserts that Wells Fargo owed her a fiduciary duty because the funds were paid out for a "special purpose," namely, to repair a residence, and therefore constituted a trust rather than a debt. *Id*. at 7-8 (citing *Van de Kamp v. Bank of America*, 204 Cal. App. 3d 819, 858 (1988); *Goldblatt v. FDIC*, 105 F.3d 1325, 1328-1329 (9th Cir. 1997)). Looking to the factors set forth in *Van de Kamp* for determining whether a deposit is general or special, Plaintiff contends that a finding that the Rehabilitation Escrow Account was a special deposit is supported by the facts alleged. *Id*. at 9. Plaintiff points in particular to the following factual allegations: 1) that the Rehabilitation Loan Agreement provides that the funds at issue were only to be paid out for a specific purpose; 2) that the Rehabilitation Loan Agreement refers to "a trust or escrow"; and 3) the funds at issue were placed in a separate account and were not commingled with other bank funds. *Id*. Plaintiff acknowledges that the payment of interest on the account points in favor of the conclusion that the deposit was general rather than special but asserts that this factor should be given little weight because Wells Fargo was required to pay interest on the account under the FHA. *Id*.

Plaintiff further argues that the punitive damage allegations and prayer should not be dismissed. First, Plaintiff notes that to the extent the Court finds that Plaintiff has adequately alleged a claim for breach of fiduciary duty, punitive damages may also be available. *Id*. at 10. Second, Plaintiff contends that Defendant's request to dismiss her request for punitive damages under Rule 12(b)(6) is procedurally improper, though she concedes that in *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970 (9th Cir. 2010) the Ninth Circuit suggested that where the sufficiency of a prayer for a particular type of relief is challenged, Rule 12(f) may not be used but Rule 12(b)(6) may be an appropriate vehicle for such a challenge. *Id*. at 11. Third, Plaintiff argues that she has alleged sufficient facts to support an award of punitive damages under California law because she has

alleged that Wells Fargo "breached its fiduciary duties to plaintiff by failing to accrue interest on the undisbursed funds . . . [,] failing to pay or credit to plaintiff all such accrued interest . . .[and] failing to inform her that it was not accruing interest on the funds" and further, that Wells Fargo "intentionally concealed from plaintiff and the members of the class material facts regarding its breaches of fiduciary duty." *Id*.at 11-12 (citing Complaint, ¶¶ 32, 34) and *Werschkull v. United Cal. Bank*, 85 Cal. App. 3d 981, 1001, 1008 (1978)).

Finally, , Plaintiff contends that Defendant has offered no reasonable basis for denying leave to amend, and dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment. *Id.* at 12-13 (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008)).

## II.     ANALYSIS

### A.     Legal Standard Under Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id.*

at 555. However, a complaint does not need detailed factual allegations to survive dismissal. *Id*. Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id*. at 570. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id*. at 557 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

### B. Whether Plaintiff Has Alleged Facts Showing the Existence of a Fiduciary Duty

#### 1. Whether Wells Fargo Assumed a Fiduciary Duty By Agreeing to Hold Plaintiff's Funds in an Escrow Account

Defendant asserts that Plaintiff's allegations fail to establish that Wells Fargo acted outside the scope of its role as a lender, even though it created a Rehabilitation Escrow Account to hold a portion of the loan funds, and therefore, that it does not owe her a fiduciary duty. The Court agrees.

As a general rule, under California law "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citations omitted). Thus,"[t]he relationship between a lending institution and its borrower-client is not fiduciary in nature." *Id*. at 1093 n. 1(citing *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 476-78 (1989)). California courts have recognized, however, that a bank may "under special circumstances undertake obligations which bring it into a 'special relationship' with a customer." *Copesky v. Superior Court*, 229 Cal. App. 3d 678, 691 n. 12 (1991). In particular, the court in *Copesky* noted that "[m]any banks affirmatively offer trust and other specifically fiduciary services, and as such are in a position to do great harm if the trust agreement is broken in bad faith." *Id*.

In *Peterson v. Torrey Pines Bank*, the court addressed whether such a special relationship arises when a bank performs escrow services in connection with a loan issued by that bank. 233 Cal. App. 3d at 117. In that case, the plaintiff sought a construction loan from defendant Torrey Pines Bank ("TPB"). *Id*. at 107. The loan agreement specified that the "Permanent Lender" was TPEC, a wholly-owned subsidiary of TPB. *Id*. at 108. "TPB processed the loan documents internally, without using an external escrow or loan escrow." *Id*. In the course of processing, it issued a loan

1 escrow statement and provided other services that are typically conducted by an external escrow
2 officer. *Id*. at 108. On the basis of this conduct, the plaintiffs alleged that TPB owed them a
3 fiduciary duty under what the court referred to as "the escrow theory of liability" and further, that
4 the duty was breached *Id*. at 116. The court addressed whether the escrow services provided by
5 TPB resulted in the defendant's "assumption of particular duties that are fiduciary in nature and that
6 removed this transaction from the usual 'arms-length borrower/creditor commercial context." *Id*. at
7 117. The court found that they did not. *Id.* at 120.

In reaching the conclusion that the bank's ancillary performance of escrow services did not give rise to a fiduciary duty on the part of TPB, the court in *Peterson* looked to the "definition and purpose of the escrow." *Id*. at 118. The court stated as follows:

> An escrow may be defined as "a transaction in which one person, for the purpose of effecting a sale, transfer or incumbrance of real or personal property to another person, delivers any written instrument, money, evidence of title or other thing of value to a third party, the escrow holder or depository, to be held by him for ultimate transmittal to the other person upon the happening of an event or the performance of certain specified conditions." ( *Lee v. Title Ins. & Trust Co.* (1968) 264 Cal.App.2d 160, 162 [70 Cal.Rptr. 378].) "The usual purpose that prompts the creation of an escrow is the desire of persons dealing at arm's-length with each other to have their conflicting interests handled by one person in such a manner as to adequately protect the rights of each of the parties to the transaction." ( *Blackburn v. McCoy* (1934) 1 Cal.App.2d 648, 654 [37 P.2d 153].) . . . To protect the interests of the parties, an escrow agent who has an interest in the transaction is obligated to disclose that interest before accepting employment as an agent for the parties to the transaction. ( *McFate v. Bank of America of California* (1932) 125 Cal.App. 683, 687 [14 P.2d 146]; also see *Becker v. Buman* (1986) 239 Kan. 342 [721 P.2d 246, 250].)

> In order to guarantee the proper performance of escrow duties, it is the general rule that an escrow agent should not be a party to the escrowed transaction. ( *Roberts v. Carter & Potruch* (1956) 140 Cal.App.2d 370, 373 [295 P.2d 515]; 2 Miller & Starr, op. cit. supra, § 5.2, at p. 398.) It has been held, however, that a bank which acted as an escrow holder did not violate any escrow duties by purchasing the escrowed property, subject to the conditions on which the property was held in escrow, as long as there was nothing in the agreements of the parties preventing the sale of the property to anyone in particular (such as the escrow holder). ( *Portuguese American Bk. v. Schultz* (1920) 49 Cal.App. 508, 512 [193 P. 806]; also see *Gurley v. Bank of Huntsville* (1977 Ala.) 349 So.2d 43, 45-46.)

> According to a leading real estate treatise, the general rule is "a lender does not assume any obligations regarding the viability of the project or investment which is financed by the loan funds as long as the conduct of the lender is limited to the activities which customarily are associated with the lending function." (4 Miller & Starr, op. cit. supra, § 9.61, p. 176.) This court has recognized in *Copesky v. Superior Court*, supra, 229 Cal.App.3d 678, 691, footnote 12, that in some cases, a bank may under special circumstances "undertake obligations which bring it into a 'special relationship' with a customer." Such circumstances include a bank's provision of trust and other specifically fiduciary services. ( *Ibid.*; see 9 Miller & Starr, op.

> cit. supra, § 28.9, at p. 30.) Such special circumstances must be distinguished from the usual bank-depositor or bank-borrower relationship. ( *Copesky v. Superior Court*, supra, 229 Cal.App.3d at p. 691, fn. 12.) In *Copesky,* with respect to the normal commercial banking context, we cautioned against the "loose characterization" ( *id.* at p. 693, fn. 14) of financial relationships as "fiduciary, quasi-fiduciary or fiduciary like" ( *ibid.*), commenting that with respect to ordinary banking transactions, "the bank is in no sense a true fiduciary." ( *Ibid*.)

*Id*. at 118-119.  Applying these principles, the court went on to hold that the escrow services provided by TPB did not give rise to a fiduciary duty, reasoning as follows:

> TPB was involved from the inception of this transaction as the lender from whom Peterson sought the construction financing; similarly, Peterson was made aware of TPEC's involvement on the face of the documents. Peterson was also aware that TPB handled the processing of the loan and presented the papers to Peterson for signature. These facts are consistent with only one conclusion: at the time of the transaction, the relationship between borrower and lender fell into the usual category of an arm's-length, adverse, "normal commercial banking transaction[ ]." ( *Mitsui Manufacturers Bank v. Superior Court*, supra, 212 Cal.App.3d at p. 729.) Despite the receipt of an "escrow statement" from TPB and Peterson's awareness TPB processed all loan papers, there are no triable issues as to whether Peterson reasonably reposed particular trust and confidence in TPB as a fiduciary, or whether TPB accepted such particular reliance. No third party was ever involved in this transaction, nor did TPB hold itself out to be a neutral, objective, disinterested conduit for the parties' exchange of documents and money. There could have been no reasonable reliance on any such representations that were never made. Consequently, we conclude Peterson's claimed reliance on TPB's loan processing procedures provides it no basis to claim a "relaxed duty" to inquire into TPB's conduct during and after the term of the loan. ( *Lee v. Escrow Consultants, Inc.* (1989) 210 Cal.App.3d 915, 921 [259 Cal.Rptr. 117].)

*Id*. at 119.

Here, similar reasoning applies: Plaintiff has alleged that she entered into a loan agreement with Wells Fargo in which Wells Fargo was the lender.  Plaintiff was aware that under the loan agreement Wells Fargo – and not a third party escrow agent – was to hold a portion of the loan funds in a separate, interest-bearing escrow account.  There are no factual allegations suggesting that Wells Fargo held itself out to be a "neutral, objective, disinterested conduit" and under the circumstances alleged, there could have been no reasonable expectation on Plaintiff's part that Wells Fargo was agreeing to act in that capacity.  Accordingly, the Court finds that under *Peterson*, Plaintiff's allegations are insufficient to give rise to a fiduciary duty on the basis of the Rehabilitation Escrow Account that was created by Wells Fargo in connection with Plaintiff's 203(k) rehabilitation loan.

The Court rejects Plaintiff's assertion that the fiduciary or non-fiduciary character of the Rehabilitation Escrow Account cannot be decided as a matter of law because this determination

turns on the particular language used in the loan documents. Where a plaintiff has identified no provisions of a loan agreement indicating that the bank was acting outside of the scope of its role as a conventional lender, a claim for breach of fiduciary duty may be dismissed for failure to state a claim under Rule 12(b)(6). *See Palestini v. Homecomings Fin'l LLC*, 2010 WL 3339459 (S.D. Cal. Aug. 23, 2010) (holding that plaintiffs failed to state a claim for breach of fiduciary duty based on allegation that their mortgage loan servicer "was acting as escrowee for their escrow account when it failed to properly allocate money from the escrow account").

The cases cited by Plaintiff do not support a contrary result. In *Marsh v. Home Fed. Sav. & Loan Ass'n*, 66 Cal. 3d 674 (1977), the court found that an impound account created a trust based on the language in the trust agreement. Here, in contrast, Plaintiff has not pointed to any language in the loan agreement reflecting that Wells Fargo offered to hold the escrowed funds in trust. Further, in *Petherbridge v. Prudential Sav. & Loan Ass'n* 79 Cal. App. 3d 508 (1977), the court found that the creation of an impound account was a debt and not a trust.

### 2. Whether Plaintiff Has Alleged Facts Showing the Creation of An Express Trust

The court further concludes that Plaintiff has not alleged facts showing the creation of an express trust. "The five elements required to create an express trust are (1) a competent trustor, (2) trust intent, (3) trust property, (4) trust purpose, and (5) a beneficiary." *Keitel v. Heubel* 103 Cal.App.4th 324, 337 (2002) (citing *Estate of Heggstad*, 16 Cal.App.4th 943, 947 (1993)). "The existence of a trust requires a clear intention to create the trust. . . ." *Marsh*, 66 Cal. App. 3d at 681-682. Although the Rehabilitation Loan Agreement refers to the Rehabilitation Escrow Account as a "trust," this alone is not sufficient to find a clear intent to create a trust where the terms of the loan agreement show that Wells Fargo was acting as a conventional lender, Wells Fargo was not identified as a trustee and Plaintiff was not identified as a settlor or beneficiary. *See Petherbridge v. Prudential Sav. & Loan Ass'n.*, 79 Cal.App.3d at 516 ("The use by the parties of the word 'trust' or the words 'in trust' does not necessarily manifest an intent to create a trust relationship"). Accordingly, the allegations in the complaint are not sufficient to establish a fiduciary duty on the part of Wells Fargo on this basis.

### 3. Whether Wells Fargo Owed a Fiduciary Duty Because the Rehabilitation Escrow Account is a "Special Deposit"

Finally, the Court rejects Plaintiff's contention that the allegations are sufficient to show a fiduciary duty because the Rehabilitation Escrow Account was a "special deposit." "A deposit made in the ordinary course of business is presumed to be general unless there is a specific agreement to the contrary evidencing the intent of the parties to create a special or specific deposit." *Goldblatt v. F.D.I.C*, 105 F.3d 1325, 1328 (9th Cir. 1997). This presumption may be overcome "where the parties' agreement provides that the exact amount of money deposited was to be returned or the money was to be paid out by the bank for a specific purpose, the money was to be segregated from other assets rather than available for the bank's general use, and the bank did not pay interest to the depositor in consideration of its use of the funds." *Id.* (citing *Van de Kamp v. Bank of America Nat. Trust & Savings Ass'n*, 204 Cal.App.3d 819 (1988)). Here, Plaintiff concedes that under the Rehabilitation Loan Agreement, Wells Fargo was to pay interest on the funds held in the Rehabilitation Escrow Account and therefore, the allegations are insufficient to overcome the presumption that the funds held in that account constituted a general deposit.

### C. Punitive Damages

Because Plaintiff fails to state a claim for breach of fiduciary duty her request for punitive damages fails as well. Accordingly, the Court need not reach the question of whether Plaintiff sufficiently alleged facts showing oppression, fraud or malice.

### D. Leave to Amend

Defendant contends the Complaint cannot be amended to state a claim for breach of fiduciary duty and therefore, that Plaintiff's claim should be denied without leave to amend. Given that a fiduciary duty may arise on a variety of grounds, the Court cannot definitively conclude that amendment is futile in this case. Accordingly, Plaintiff shall be permitted to amend her complaint, if

she can, to allege specific facts consistent with this decision that may establish the existence of a fiduciary duty.[2]

### IV. CONCLUSION

For the reasons stated above, Plaintiff's claim for breach of fiduciary duty, as well as her request for punitive damages on that claim, is dismissed with leave to amend. If Plaintiff chooses to amend her claim for breach of fiduciary duty, an amended complaint shall be filed no later than thirty (30) days from the date of this Order.

IT IS SO ORDERED.

Dated: November 23, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge

---

[2] The Court notes that although Plaintiff specifically argued in her Opposition that she should be permitted to amend her complaint, Wells Fargo failed to address this issue in its Reply brief.